Good morning, everyone. Our first case for argument this morning is United States v. Napier. Good morning, Your Honors. I'd like to reserve three minutes for rebuttal. May it please the Court. The question presented in this case is whether the government can, by its own fiat, deprive a defendant of any practical ability or opportunity to challenge the factual basis for his arrest. All Americans are protected by the Fourth Amendment from unreasonable searches and seizures. Every American is entitled to challenge an unreasonable search by, amongst other things, traversing a warrant pursuant to the Franks' decision. Every American, that is, except for Arthur Napier. Arthur Napier was arrested on October 11, 2001, on the basis of a warrant, which I have never seen and Arthur Napier has never seen. What we have seen instead is a small fragment redacted from the warrant indicating in the most conclusory and skeletal fashions that there were controlled buys in this case at some unspecified time in September and at some time in October specified to within the first 10 days, but that's obvious because he was arrested on the 11th of October. Well, it's well-established Supreme Court law that there are occasions when identities of people can be kept away from the prying eyes of defendants. That is correct. And this seems to be nothing more than an example of that, and it seems to me also that your side was given an opportunity to have the judge conduct considerable in-camera investigation into this and declined. Well, Your Honor, we declined because an in-camera investigation would be essentially a nullity because what he would be doing, His Honor, however sincere, would be shooting into a cloud. You know, this happens all the time. Informants get investigated. They look at things in camera. I did this for 23 years, and this was a standard practice, and there are certain balancing privileges that go on, and judges do this all the time. I can't understand why you would have declined the opportunity to have a judge take a careful look at this. Well, Your Honor, we didn't decline the opportunity to have the judge take a careful look at it. We had an evidentiary hearing before the judge in which the officer came in and testified. The problem was was that there was nothing specific that was said by the officer. I am assuming that had the judge had the informant present in camera, the informant would have said precisely what was in the affidavit, assuming there was an informant. The informant would then have given the judge precisely the information the judge already had. Well, our judge – The judge offered to do this and take a look to see whether you were – he was – they were dealing with information that either should have been available on Franks or Discovery. Well, the problem is is that there is no way we would be able to make any kind of focused inquiry because we didn't know what the factual particulars were. But the problem is that the confidential question was the identity of the informant, and there's no way that you could get the information you wanted without disclosing the identity of the informant. I agree with the last statement by Your Honor, but I disagree with the first statement. It is the premise the Court adopted, and I think the premise is wrong. The issue was whether we could have enough information to mount a Franks challenge. And you couldn't do that without the identity of the informant, right? I don't know that for sure, but let's assume it to be true. Then the government has the ordinary obligation that people have – that the government has in an informant case, which is, is that if the informant is that important, the government has to disclose or dismiss. Now, that's a trial. We're not at trial yet. Often, said the Supreme Court, the suppression hearing is more important than the trial. That was this case. This case turned on the suppression motion. There's no way in which Mr. Napier was going to explain away a pound of cocaine sitting on his kitchen table. The question was whether he had a constitutional right to have that cocaine suppressed. We couldn't make the essential ordinary challenge to the seizure of that cocaine because we knew nothing, and I mean nothing, about how to – Do you agree with Judge Stratt that it's a balancing question? If we were seeking the identity – No. Do you agree with Judge Stratt's statement that here the district court has to balance the position of the government with the position of the defendant? Would you agree with that or not? I disagree with that. Okay. You have an absolute right, then, to know the identity of the informant in this case. No. We have an absolute right to bring a Franks motion. And if bringing a Franks motion means that we get enough specific information that somehow the informant's identity is disclosed and the government chooses not to disclose it, the government can dismiss the case. You don't have an absolute right to anything. You have an absolute – You have a right to have a Franks hearing if you're able to produce some information suggesting there ought to be one. You didn't even go that far. I mean, had your client said, for example, during the month of August, I was in Cleveland, Ohio. I can't possibly have done what was attributed – some sort of a showing like that. But I didn't see anything like that either. This was simply a raw assertion of power to get the identity of the informant with nothing behind it. Well, actually, I have to disagree with the court's characterization. The client said that he would be prepared to say that he did not deal any drugs during September and October, that what was on his kitchen table, by implication, was what he might have dealt, and that the officer simply intuited that he was a drug dealer and arrested him. There had been a history of false informants in the case before, according to the officer. Apparently, the defendant's ex-spouse, embittered at him for some reason, had falsely informed on him. So we know that at least on one occasion there was a false informant. That came out at the evidentiary hearing. What we don't know is when it was that he allegedly dealt the drugs. How in the world could anybody, Your Honors included, account for 24 hours a day for a 40-day period for everything that one has done? Well, I don't want to repeat myself, but where your side shot itself in the foot was turning down the opportunity to have the judge conduct this kind of a hearing. Your Honor, I understand the court's position. I appreciate your position, but, I mean, I can't believe that you would have foregone that opportunity. You could have still, still maintained the position that you're arguing here today and possibly made some headway. You know, judges frequently find things that prosecutors don't understand, and then they tell the prosecutor, look, you've got to turn this over or dismiss the case. The reason that we forewent that hearing was because it was my belief, and I think it's a well-justified and well-founded belief, that the informant would have said nothing other than what was in the affidavit. How could the judge have passed it? That was – you're entitled to make that judgment, but it's not one that's going to hold up very well when you're now complaining that you were denied an opportunity in the trial court. That's fine. Then what the court should do is remand the case so we can have that hearing. This is not do-overs. We're an appellate court. I understand that, Your Honor, but you still have the opportunity to remand. And the question here is – well, there's another way of solving this case, and, you know, I've only got about 22 seconds left, so I want the court to understand it. There's a second fallback position that doesn't have a grandiose constitutional point to it, and that is that in 2003, when Mr. Napier had been out of custody for a year plus and no harm had come to an informant and not a breath of scandal had been whispered about Arthur Napier, when he was in fact in a kind of quasi way cooperating with the government in some ways, the court declined to go and release the search warrant affidavit even then. Now, under any case that I've seen, that balancing was done in an abusive and non-discretion – a way abusive of discretion. Mr. Napier could very easily have had the affidavit disposed to him then. But I'm going to go into my time for a second, but I disagree with the basic premise of your Honor with great respect. That is that had the informant come forward, what could the judge have asked him except to put in further detail without any rebuttal from Mr. Napier as to where Mr. Napier was? Every defendant has a right to present that kind of evidence and to have some specificity. So I would submit it. If the court disagrees with me, I understand what I'm doing. This is irrelevant. We just had a case yesterday where an affiant disclaimed half the stuff that was in the affidavit in a civil case. I mean, this happens. Sure. But he had an affidavit to disclaim. We didn't. We had nothing except a general idea that somewhere over 40 days, a purchase was made at an undisclosed place, an undisclosed person under undisclosed circumstances. All we know is that the informant met with the police officer a couple of miles away, and the informant had a cell phone. That's all we know. Did you want to save time for rebuttals? Yes, yes, I did. All right, thank you. Thank you. May it please the Court. My name is Ken Malikian. I'm an assistant United States attorney for the Eastern District of California, and, of course, I represent the United States in this action. Your Honors, Mr. Napier is asking this Court to do something that, as far as the government has been able to ascertain, no other court in this country has done, and that is to hold and find and declare that under any and all circumstances, a defendant has an absolute right to always examine a search warrant affidavit. Mr. Napier, in his opening statement, indicated that the government, by its own fiat, has concealed a portion of the search warrant affidavit in this case. That is not true. This search warrant was examined by two magistrates at two different levels. The sealing was done by the state magistrate in the county of Vallejo for reasons provided to him by the affidavit. On these facts here, did the district court judge properly tip the balance in favor of nondisclosure? Yes, Your Honor. On these facts, we have – and I want to emphasize, before I answer your question, Your Honor, that we are not suggesting in any way, shape, or form that this should be a routine procedure. This is a proposed procedure, and, in fact, it is a procedure in the State of California, to be used in rare circumstances. And Judge Burrell and the district court realized that. He realized that, under the facts of this case, Mr. Napier was a three-time convicted drug trafficker. The case law in this court makes it clear that drug trafficking crimes often involve violence, or I should say drug trafficking defendants often involve violence, and confidential informants' identities are to be handled carefully. In addition, he had received, I believe, three misdemeanor convictions for crimes of violence. One of them was a domestic violence charge. One of them was resisting or obstructing a peace officer. The third was a rather minor violation of offensive words in public. At the time of the hearing in this court, Judge Burrell was made aware that there was a pending misdemeanor domestic violence charge against the defendant. And he was also made aware, by Detective Meredith, at the hearing that was held, that the defendant had a rather long rap sheet that included at least one other arrest for a very serious violent offense for which there was no conviction. The district court realized that the examination of the sealed portion of the search warrant affidavit presented very unique facts that would be unique to one individual and one individual only, and that is the confidential informant. And based upon the defendant's record of drug trafficking, based upon his misdemeanor record of violence, based upon pending charges, based upon the severity of this very case, which was a 10-year mandatory minimum case, the judge felt that procedures had to be taken to protect the identity of the confidential informant, and the government submits that Judge Burrell correctly decided that. The government notes that three courts have addressed this issue. As you are aware, the Hops Court, the Supreme Court of California, the Hops decision, the New York High Court in the Castillo decision, and the Eleventh Circuit in the Williams decision. And in each of those cases, the courts found that there had to be a balancing act, and that is what the government is indicating needs to be done in this case and in all other cases. And the government submits that the balancing act was done properly, and in answer to the court's question, the government has indicated the dangers that the court believed were vital dangers at the time to the confidential informant. But the balancing act that Judge Burrell conducted also went further. He requested that the government provide a redacted portion of the search warrant affidavit that was sealed. Basically, I was asked to summarize that portion of the search warrant affidavit, which was done. Clearly, and there's no dispute, the information that was summarized in that redacted portion established probable cause for the search at issue. Certainly, dates were omitted, times were omitted, locations were omitted, quantities were omitted, prices of the drugs were omitted. But basically, the defendant was given information as to the probable cause that justified the search. Secondly, Judge Burrell had the affiant, Detective Meredith, testify in court, and he was subject to cross-examination. Detective Meredith personally observed both of these transactions. Now, he was at a distance, and he did not see the hand-to-hand exchange, but he saw the meeting between the informant and the defendant. And these were typical procedures in which the defendant is searched beforehand. He goes, meets the defendant or the suspect. He comes back, and now he's got drugs that he didn't have before. And certainly, the cross-examination by Napier's counsel was limited. Again, places, times, dates, et cetera, were excluded from cross-examination. But nevertheless, the affiant's general observations and his credibility were put to test in open court. And finally, Judge Burrell made available to the defendant on a number of occasions the right for Judge Burrell to conduct an in-camera hearing. So we essentially have a situation where the district court is absolutely satisfied that the safety of the confidential informant requires that the sealed portion of the search warrant affidavit remain sealed. He offers the defendant to conduct an in-camera hearing, ex parte. He instructs the government to provide a redacted portion or a redaction of the sealed portion of the search warrant, which the government does. And he brings the search warrant's affiant to open court for direct and cross-examination for Mr. Napier to test his credibility and for the court to examine his credibility. I would submit that under these circumstances, based upon Roviaro and the other cases that I have cited, the district court had no choice but to find that the search warrant affidavit had been properly sealed. I will very briefly, Your Honors, address counsel's assertion that because he wished to pursue a Franks motion, the district court needed to unseal the sealed portion of the search warrant. No court anywhere has held that the ability to pursue a Franks motion is absolute. The cases the government have decided all dealt with challenges to a search warrant concerning probable cause. This case, of course, probable cause isn't challenged, but the defendant wished to bring a Franks hearing. Once again, the district court was balancing interests when the district court noted that the defendant's claim that he had not sold crack cocaine to anybody in the last six months was pretty far-fetched. The search warrant uncovered a pound of cocaine. It uncovered an ounce of crack cocaine. It uncovered a scale, packaging materials, $2,300 in cash. There was cocaine and crack cocaine on the defendant's purse when he was arrested, albeit in small quantities. Well, that's what they found. That's what they found. What did they know without the information from the confidential informant? Did they know anything else? No. Your Honor, the information from the confidential informant regarding these two controlled buys was absolutely essential to the issuance of the search warrant. But after the fact, while what is found can't justify a defective search warrant, it can be used by Judge Burrell, which he did use, in conducting this balancing act. The defendant said, I need to conduct a Franks hearing. The reason I need to conduct a Franks hearing is I believe there are falsities in that sealed portion of the search warrant affidavit. The reason there are falsities is that I haven't sold drugs to anybody in September and October of 2001. No one. So since I have sold drugs to no one, I have not sold them to that confidential informant who says that I did. Well, the person who claimed that he needs to hold a Franks hearing because he sold drugs to no one is in possession of a pound of cocaine, $2,300 of cash, a scale, et cetera. Judge Burrell rightfully realized at that point that the defendant's Franks pursuit was, and I'll be kind to call it far-fetched. That motion was going nowhere. He hadn't made any preliminary indication required by Franks to justify the Franks hearing. And Judge Burrell, in conducting the balancing act, had every right to question the defendant's assertion that he had not sold drugs to anybody in six weeks when the evidence that was uncovered by the search warrant proved quite to the contrary. In short, the government submits that in rare cases there are circumstances in which the identity of a confidential informant must be kept secret. This was one of those circumstances. Both the reviewing magistrate in Solano County and the district court judge reviewed that portion of the search warrant affidavit that was sealed. The district court judge conducted a thorough analysis of the government's interests versus the defendant's interests, and based upon that thorough analysis determined that the defendant's pursuit of a Franks motion was far-fetched. The government's interest in protecting the confidentiality of this informant was quite valid. Justice Blackmun says in Franks that the defendant, in order to be entitled to a Franks hearing, has to make a substantial preliminary showing that a false statement knowingly and intentionally or with reckless disregard for the truth was included by the affiant in the warrant affidavit and it was necessary to defining a probable cause. What's the standard of review that we use to examine a conclusion by a judge that there was or was not a substantial preliminary showing? Your Honor, I believe that factual findings, which that would be, are reviewed, as I indicated in my brief, for an abuse of discretion. And I would submit that certainly Judge Burrell did not abuse his discretion. I see my time is up unless the Court has any other questions. Thank you. Thank you very much, Your Honors. Just very briefly in response. My belief is that the substantial showing test, whatever it is, can't be applied in this case because there was nothing upon which the defendant could predicate a showing other than a blanket denial. Of course, that doesn't sound very convincing. But what could he have said? He knew nothing. As for the issue of the in-camera review, and I share Your Honor's concern, I really understand where you're coming from. What question, and I would ask Your Honor to think about this when this opinion is reviewed, what question could any one of you think up that you could ask the informant? You know, I've been in these things hundreds of times, and the ones that I've been in, if you want to get to what question I can think of, are very penetrating. Judges are not members of the executive branch, and I've had judges crawl all over informants because judges are very aware of the fact that some informants will sell somebody down the river just to procure their own freedom. So judges can get very penetrating in these questions. Correct. Of course. But what could one ask that would show that Napier wasn't there, unless Napier had a proffer as to where he was? And you can't make that proffer other than to say he wasn't there at all. The same kind of questioning that a defense attorney subjects people to when they go in and they say, I was in a cell with Jones and he confessed, or I bought narcotics from him, or I saw him commit the burglary, or I was the getaway driver. It's the same kind of examination. You're just assuming that a judge is going to say, oh, hello, is this what you told the police? Thank you very much. That's not what happens. I'm assuming that the judge could ask hours and hours of questions, but there's nothing he can get to. You're telling us the judge is incapable of penetrating any deception. No, of course not. I'm saying that the judge is incapable of asking the kind of focused question in response to Napier's explanation of his whereabouts that would actually test what the informant said. Your Honor came up with the one hypothetical, which I think occurs to all of us in the middle class, where maybe he was at all the time. Okay, I'd ask him, you got a cell phone? And he says yes. All right, I'd say get your records in here. I want to see where you were calling from on such and such a date. Do you have a credit card? Do you use it? I want to see your credit card records to see where you were. There's a lot of ways you can pin down where somebody was. Wait a second. You were in Oakland, or you were in Solano making all these telephone calls. Now, you're telling us you were on September whatever it is, you were buying drugs from this guy? I understand. I mean, there's a million ways you attack this. We do this all the time. I understand that, but there is very little likelihood that that would actually uncover anything. He was probably with the police. The question is, was he with Arthur Napier? Okay. And there's no way to find that out. Okay. Well, I thank the court for its spirited question. Thank you. The matter will be submitted. Thank you for your argument. I appreciate it.
judges: Trott, T.G. Nelson, Paez